Bronwen **LEINBERGER**, formerly known as Bronwen Roberts, Plaintiff,

v.

George Paul **WEBSTER** et al., Defendants.

No. 74 C 1433.

United States District Court, E. D. New York.

Feb. 6, 1975.

Segan, Culhane, Nemerov & Geen by Jeffery A. Nemerov, New York City, for plaintiff.

Pizzitola & DiBlasi by Michael Wolpinsky, Brooklyn, N. Y., for defendant Leinberger.

J. Robert Morris, New York City, by John J. Bradbury, for defendant Lovell.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action to recover for personal injuries allegedly sustained in a Vermont automobile accident is now before the court on (1) plaintiff's motion to remand the case to the Supreme Court, Queens County, from which it was removed, and (2) defendant E. Sherbourne Lovell's crossmotion to transfer the case to the District of Vermont under 28 U.S.C. § 1404(a).

These facts are not in dispute. On March 15, 1972, plaintiff was a passenger in an automobile being driven by defendant Clifford Leinberger, to whom she is now married. As their vehicle was proceeding along Thompsonburg Road near Londonderry, Vermont, it was struck by an automobile driven by defendant George Paul Webster and owned by Antoinette Kelly, who has not been sued. Following the accident the Londonderry Rescue Squad and a Vermont State Trooper, Gary Booten, arrived on the scene and administered some medical treatment to plaintiff. Thereafter, she was taken by the Londonderry Rescue Squad to the Springfield Hospital in Springfield, Vermont, where she was treated by defendant Lovell, a Vermont medical doctor.

Plaintiff claims damages from Webster and Leinberger for alleged negligent operation of their respective automobiles and from Dr. Lovell for alleged malpractice in treating her injuries. The action was originally commenced in the State court on a quasi *in rem* basis by attaching Webster's automobile liability policy

and Dr. Lovell's malpractice insurance policy. Defendant Leinberger, a New York citizen, was served with process in the normal course. Lovell removed the action to this court and plaintiff now moves to remand the case to the State court. Lovell opposes remand and has cross-moved to change venue to the district court in Vermont pursuant to 28 U.S.C.A. § 1404(a).[1]

### *Motion to Remand*

#### A. *The Question of Joinder*

An action such as this may not be removed to a federal court unless none of the defendants properly joined "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Here, plaintiff's husband, defendant Leinberger, is a citizen of New York and accordingly, plaintiff argues, the action was not properly removable and should be remanded to the State court.

Defendant Lovell opposes remand with the argument that the presence of plaintiff's husband as a defendant in this action is a collusive attempt to defeat diversity jurisdiction. Both Lovell and Webster are unquestionably citizens of Vermont and Lovell points to the fact that Webster, the driver of the other automobile, has all but admitted responsibility for the accident in statements given to a Vermont State Trooper and the Vermont Department of Motor Vehicles.

While plaintiff may not have a strong case against defendant Leinberger because of Webster's alleged admissions, that does not suffice as a ground for holding that joinder was collusive. To warrant a holding that Leinberger's presence in this suit should be ignored for removal purposes, Lovell would have

---

1. Lovell has also moved to dismiss for lack of quasi *in rem* jurisdiction on the theory that the attachment of his insurance policy is unconstitutional. The motion is without merit. See Fuentes v. Shevin, 407 U.S. 67, 91 n. 23, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Nor is there any merit to the sug-

gestion that Sugar v. Curtis Circulation Company, 383 F.Supp. 643 (S.D.N.Y.1974) (three-judge court), holds otherwise. The jurisdictional attachment here was obtained under CPLR § 6201(1), which was not involved in the *Sugar* case.

to show either that plaintiff's complaint evidences no intention to obtain a joint judgment against Webster and Leinberger or a lack of colorable factual support for plaintiff's allegations concerning Leinberger. Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176–77 (5 Cir. 1968); Smith v. Southern Pacific Company, 187 F.2d 397, 401 (9 Cir.), cert. denied, 342 U.S. 823, 72 S.Ct. 42, 96 L.Ed. 622 (1951); see also McAfee v. Phillips Petroleum Company, 300 F.Supp. 651 (D.Mont. 1969); 1 Moore's Federal Practice ¶ 0.162[2]. Here, Leinberger was the driver of one of the two vehicles involved. A jury might well find that despite Webster's admissions, Leinberger also failed to act reasonably under the circumstances. See Mails v. Kansas City Public Service Co., 51 F.Supp. 562, 565 (W.D.Mo.1943).[2] Thus, the court cannot conclude at this stage that Leinberger was not properly joined as a defendant. The removal was therefore improper and remand would be required unless Lovell succeeds on his remaining contention.

B. *The Question of Separate and Independent Claim*

■ As a separate ground, defendant Lovell maintains that this action is properly here under 28 U.S.C. § 1441(c), which provides:

"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

If, in fact, plaintiff's claim against Lovell can be considered a separate and independent claim within the meaning of § 1441(c), then the absence of complete diversity among defendants will not preclude removal of this action. It is well settled that the subject matter jurisdiction of the district court in a case removed under § 1441(c) is broader than it is under the general diversity statute, 28 U.S.C. § 1332. See State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 531 n. 7, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

■ The threshold question is whether in a complaint alleging that the negligent operation of automobiles caused injuries which were compounded by a subsequent malpractice, the malpractice claim may be regarded as a separate and independent claim within the meaning of § 1441(c). The court concludes that plaintiff's claim against Dr. Lovell is such a claim.

The Court in the leading case of American Fire & Casualty Co. v. Finn, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L. Ed. 702 (1951), stated what a separate and independent claim is not:

"[W]e conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)."

Explaining the meaning of the above-quoted language, Professor Moore comments:

"Whenever, for example, two or more defendants individually act in such a manner that each has invaded a separate right of the plaintiff and thereby caused as many wrongs, the plaintiff has multiple claims against the several defendants individually; and although

---

2. "Fraudulent joinder is never entertained where there is any controversy, however slight, on the facts of the case. The rule against fraudulent joinder is never effective save in those cases where no other conclusion can be reached except that a defendant is named without justification or excuse for the sole purpose of depriving the federal court of jurisdiction." 51 F.Supp. at 565.

plaintiff joins defendants in one action, on the basis of a common question of law or fact, the claims are separate and independent within the intendment of § 1441(c). Or, stated differently, where a plaintiff sues to enforce two or more distinct rights, or to redress their invasion, he has as many causes of action; and although modern procedure permits him to and he does join the various defendants, because of the presence of a common question of law or fact, plaintiff's claims are separate and independent for removal purposes." 1A Moore's Federal Practice ¶ 0.163[4.–5].

Here, plaintiff claims that the negligence of defendants Leinberger and Webster resulted in two fractures of her arm and that this injury was exacerbated by the subsequent negligence of Dr. Lovell in failing to detect and treat one of the fractures. Clearly, plaintiff's right to be free from negligently caused injury was violated before Dr. Lovell entered the picture. The alleged malpractice was a subsequent act which occasioned a separate result, i. e., a worsening of the already injured arm. The claim against defendant Lovell thus appears to be separate and independent within the meaning of § 1441(c). See Greenshields v. Warren Petroleum Corporation, 248 F.2d 61, 65–66 (10 Cir.), cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262 (1957).

Further support for this conclusion appears in the *Finn* case itself. In finding no separate and independent claim in that case, the Court noted that "the damage comes from a single incident"

(341 U.S. at 16, 71 S.Ct. at 541). Here the alleged damage resulted from incidents which were both spatially and chronologically distinct.

It seems clear that by enacting the predecessors of § 1441(c) Congress intended to provide access to the federal courts to a defendant who was entitled to a federal forum but who, because of liberal joinder rules, found himself bound to an ineligible co-defendant. While the 1948 revision of the removal statutes was designed to require a more restrictive test for independent claims than the prior "separable controversy" test, see *Finn, supra,* 341 U.S. at 9–12, 71 S.Ct. 534, 95 L.Ed. 702, the Congressional objective of permitting removal of a truly independent claim was continued.

■ It would be manifestly unjust to deny removal to a non-resident doctor simply because the need for treatment arose out of an automobile accident. That New York law holds the negligent driver liable for damages caused by the subsequent malpractice does not defeat the non-resident doctor's right to remove the separate claim against him. The existence of overlapping factual questions goes only to the issue of whether the entire case should remain in the federal court after removal and not whether it may be removed initially.

It is noteworthy also that the New York courts have held that negligent operation of an automobile by one defendant followed by a physician's malpractice constitute two separate and distinct causes of action. Derby v. Prewitt, 12 N.Y.2d 100, 105–06, 236 N.Y.S.2d 953, 958, 187 N.E.2d 556, 559–60 (1962); [3]

3. *Derby, supra,* was a case in which plaintiff was struck by a taxicab and suffered a fracture of the femur. The treating physician allegedly worsened the condition, resulting in a permanent shortening of the leg. Plaintiff settled with the taxicab driver and gave him a release. The physician defended a later malpractice suit on the theory that the release of one joint tortfeasor released him. In rejecting this defense the Court of Appeals stated:

"Their wrongs were independent and successive, rather than joint, and this being so, the plaintiff had not one but two separate and distinct causes of action, one against the cab driver for the negligent operation of his vehicle and the other against the doctor for his alleged malpractice in treating the fracture which the plaintiff sustained in the automobile accident". 12 N.Y.2d at 105, 236 N.Y.S.2d at 958, 187 N.E.2d at 559.

Musco v. Conte, 22 A.D.2d 121, 254 N. Y.S.2d 589 (2d Dep't 1964).

The only federal precedent to the contrary, Gordon v. Manzella, 270 F.Supp. 40 (W.D.Mo.1967), has been criticized as unsound. The *Gordon* case was an action against two defendants, both of whom were involved in automobile collisions with the plaintiff but at different times, one on July 2, 1965, and one on May 17, 1966. One defendant was a Kansas citizen, who removed the case from the Missouri State court. Although recognizing the logical difference between successive and concurrent acts of wrongdoing,[4] the federal court granted a motion to remand, holding that no separate and independent claim was stated under 28 U.S.C. § 1441(c), since joinder of the claims was permissible under Rule 20(a), F.R.Civ.P. Commenting on that case, Professor Moore states:

> "The decision is unsound, since the court seems to find that where joinder is proper under Rule 20(a) on the basis of a common question of fact and the wrongs committed by each defendant are of the same *type*—a separate and independent controversy cannot exist under § 1441(c) . . . ." (Emphasis in original.)

1A Moore's Federal Practice, ¶0.163[4.–5], n. 35.

Insofar as· *Gordon* indicates that no separate and independent claim exists in a case involving subsequent tortfeasors, this court does not find it persuasive and declines to follow it.

■ Having decided that a separate and independent claim is stated as against Dr. Lovell, there remains the question of whether the entire case should remain in the federal court or the non-federal claims be remanded to the State court. This court has such discretion. See 1A Moore's Federal Practice ¶0.163[4.–8]. The real question is whether the interests of the parties and of judicial economy would derive any benefit by a remand of that part of plaintiff's case relating solely to the negligent operation of the automobiles.

■ In this case the existence of overlapping questions of fact, *e. g.*, the extent of the injury caused by the automobile accident (since the doctor is liable only for worsening the condition), dictate that judicial economy will best be served by trying the actions in one suit. See Herrmann v. Braniff Airways, Inc., 308 F.Supp. 1094, 1100 (S.D.N.Y. 1969); Griebel v. J. I. Case Credit Corporation, 285 F.Supp. 621, 624–25 (D. Minn.1968); Breslerman v. American Liberty Insurance Company, 169 F.Supp. 531, 534 (E.D.N.Y.1959); Baltimore Gas & Electric Company v. United States Fidelity and Guaranty Company, 159 F.Supp. 738, 741 (D.Md.1958). Indeed, plaintiff herself admits that the same witnesses will have to testify twice if this case is separated into two parts. Accordingly, the entire case should remain in the federal court.

### Venue

■ Turning now to Lovell's cross-motion, it is well settled that a removed action may be transferred to a more appropriate district. See Benton v. Elkins, Weems and Searls, 255 F.2d 299 (2 Cir.), cert. denied, 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958); Headrick v. Atchison, T. S. F. Ry., 182 F.2d 305 (10 Cir. 1950); 1A Moore's Federal Practice ¶0.157[10.–2]. The only condition is that the district be one "where it

---

4. The court's language in *Gordon* is apposite here:

> "It may be argued as a general proposition of logic that the injuring and aggravation of original injuries of a plaintiff by successive acts of different defendants at different times is unlike so-called concurrent negligence where two forces put in motion at the same time, or closely related times, by different defendants produce in a single occurrence injuries to the plaintiff." 270 F.Supp. at 42.

might have been brought." 28 U.S.C. § 1404(a). Since both causes of action arose in Vermont, venue could originally have been laid there under 28 U.S.C. § 1391(a).[5]

 A motion to change venue is directed to the discretion of the district court, Ladson v. Kibble, 307 F.Supp. 11, 15 (S.D.N.Y.1969). In deciding whether to exercise that discretion, a plaintiff's choice of venue should not be lightly upset. The burden of establishing the propriety of a change in venue rests upon the movant. Ford Motor Company v. Ryan, 182 F.2d 329, 330 (2 Cir. 1950); 1 Moore's Federal Practice ¶0.145[5]. That burden has been met in this case.

 Plaintiff's choice of forum is not as rigidly adhered to if all the operative facts occurred elsewhere. Ryer v. Harrisburg Kohl Brothers, Inc., 307 F. Supp. 276, 279 (S.D.N.Y.1969); Fitzgerald v. Central Gulf Steamship Corp., 292 F.Supp. 847, 849 (E.D.Pa.1968).[6] Here, as related above, both the automobile accident and the treatment by Dr. Lovell took place in Vermont.

The convenience of material witnesses is another important factor. Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1607 (1947). Particularly is this so when material witnesses are not subject to the subpoena power of the forum court, necessitating the introduction of crucial testimony via depositions rather than through the preferred method of live witnesses. Gulf Oil, supra, 330 U.S. at 511, 67 S.Ct. 839, 91 L.Ed. 1607;[7] Ryer, supra, 307 F.Supp. at 281.

Here, the State Trooper and personnel of the Londonderry Rescue Squad who arrived at the scene of the accident are residents of Vermont. Their testimony concerning road conditions on the day of the accident, what they observed at the scene and what statements, if any, were made by the parties will certainly be central to the issue of liability. Webster, the driver of one of the vehicles, is a resident of Vermont and his testimony will play an essential part on the question of liability.

After the accident, plaintiff was taken to, and remained for several days in, a Vermont hospital. The records of that hospital are in Vermont. The treating physician, defendant Lovell, is a Vermont resident who continues to practice in Vermont. Hospital personnel at the time of plaintiff's stay continue to reside in the Vermont area.[8]

Moreover, the damage issue is rendered more complicated by the fact that several days prior to the automobile accident plaintiff suffered injuries in a

---

5. " § 1391. Venue generally

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

6. This is especially true in cases where jurisdiction is obtained via Seider [Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S. 99, 216 N. E.2d 312 (1966)] attachments. See Minichiello v. Rosenberg, 410 F.2d 106, 118–19 (2 Cir. 1969):

"We note a further point which at least mitigates some of the many undesirable practical consequences of Seider. By their very definition actions of the Seider type will generally be removable to the federal courts . . .. Once in federal court, they become subject to the salutary provision of 28 U.S.C. § 1404(a) . . . .."

7. "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." 330 U.S. at 511, 67 S.Ct. at 844.

8. Dr. Lovell has supplied, in his moving affidavit, a list of eight persons who were employed in the hospital at the time of plaintiff's stay, who have been interviewed in connection with this case, and whose testimony he contends will be relevant on the damage issue. Of the eight, seven live in Vermont and one in New Hampshire.

skiing accident in Vermont. While the defendants, if found liable, are responsible for any aggravation of existing injuries, they cannot be held responsible for injuries caused by the skiing accident. It may thus be necessary to call witnesses at trial to testify to the nature and extent of the skiing injuries. As defendant Lovell states in his moving affidavit, "the proofs of just what injuries were sustained in Vermont are in Vermont."

Plaintiff opposes the motion to change venue by asserting that both plaintiff and defendant Leinberger are New York residents; that both of them have uninsured motorist claims pending against Leinberger's insurance carrier; that plaintiff is under the care of three New York physicians; and that plaintiff was examined in New York by defendant Lovell's physician.

■ The convenience of expert witnesses, such as the New York physicians, is entitled to little or no consideration. 1 Moore's Federal Practice ¶0.-145[5] n. 12. That two of the parties are New York residents is a factor in plaintiff's favor but is clearly outweighed by the fact that two other parties and all non-party lay witnesses and police and hospital records are in Vermont. See Higgins v. California Tanker Co., 166 F.Supp. 42, 43 (D.Del.1958). In sum, this is a Vermont case.[9]

While the convenience of witnesses alone would justify a transfer, there is an additional ground. Although plaintiff has attempted to obtain *in rem* jurisdiction over defendant Webster by attaching his automobile liability policy, and effected a substituted service of a summons in March 1974, Webster's liability carrier, Lumberman's Mutual Casualty Company, has not entered an appearance or answer on his behalf. Apparently, it is the position of Webster's carrier that non-party Kelly's insurance carrier should defend the action and indemnify Webster to the extent of her coverage.

■ If the action is transferred to the Vermont District Court, process could then issue to Webster and Kelly, thereby bringing before the court all proper parties. Transfers to enable process to issue were approved in Fein v. Public Service Coordinated Transport, 165 F.Supp. 370 (E.D.Pa.1958), and Banachowski v. Atlantic Refining Company, 84 F.Supp. 444 (S.D.N.Y.1949). Plaintiff's ability to obtain personal jurisdiction over Webster and Kelly in Vermont may thus lead to a resolution of the indemnification question. In any event, the uninsured motorist claims do not support retaining the case in New York.

Plaintiff's motion to remand the case to the State Supreme Court is denied

---

9. This case bears a striking resemblance to Jarvik v. Magic Mountain Corporation, 290 F.Supp. 998 (S.D.N.Y.1968), where plaintiff was injured on a ski chair lift in Vermont operated by the defendant Vermont corporation. The action was begun in the New York Supreme Court by attaching defendant's liability policy and removed, on diversity grounds, to the federal court. In granting a transfer to Vermont, the court noted:
"The accident happened in Vermont. The ski tow which was the scene of the accident is located there. Defendant and all its witnesses reside there. Plaintiff Laurence Jarvik received hospital treatment in Vermont and the medical records of that treatment are to be found there.

"On the other hand, plaintiffs are New York residents. It is said that Laurence received medical and hospital treatment in New York. The nature of this treatment and the identity of those who provided it is not specified, beyond the fact that Laurence's parents, one of whom is also a plaintiff here, are physicians.
"Plaintiffs' attorney says that it will be an 'undue hardship' upon Laurence to require him to 'travel to a distant state for his day in court.' This argument does not impress me. Vermont is not very distant from New York. There is no claim that Laurence's physical condition makes it dangerous for him to make the journey." 290 F.Supp. at 1000.

and defendant's cross-motion to transfer the case to the United States District Court for Vermont is granted.

So ordered.