IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31226-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KELLY E. SMALL, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Kelly Small appeals from his Okanogan County convictions for

aggravated first degree murder, first degree rape, and first degree burglary, primarily

challenging the jury selection process and the sufficiency of the evidence of

premeditation. In the published portion of this opinion, we reject his public trial

argument. In the unpublished section, we affirm the convictions and remand to superior

court to amend his burglary sentence and potentially reconsider Mr. Small's legal

financial obligations.

PROCEDURAL HISTORY[1]

These convictions arose from cold case investigations in the 1998 death of S.B., a

50-year-old woman living in Omak, and the 2006 sexual assault of B.M., who also was a

---

[1] The evidentiary facts necessary to resolve the unpublished issues will be discussed
in the unpublished portion of this opinion.

resident of Omak. During the investigation into the 2006 crime, a detective in 2010 obtained a DNA sample from Mr. Small. The ensuing evaluation of that evidence connected Mr. Small to both the 1998 and 2006 crimes.

Both cases were charged under a single cause number. The trial court granted Mr. Small's motion to sever the two cases. The 2006 case involving B.M. was tried first during August 2012, with the jury convicting Mr. Small of rape, burglary, and forgery. This court affirmed the convictions in the ensuing appeal.[2] The three charges involving S.B. were tried to a different jury beginning the following month. Although the aggravated murder charge did not include a request for a special sentencing proceeding, a large number of jurors had to be called in for each case due to the fact that they were tried close together in time and each had received significant local publicity. Jury selection took several days for each trial.

During jury selection, the parties exercised peremptory challenges on paper by passing a sheet back and forth between counsel. The posttrial location of this document became a matter of some controversy. It was not listed on the clerk's file index, leading a clerk of the superior court to advise Mr. Small's appellate counsel that it was not on file. Mr. Small made a motion to add the e-mail exchange with the court clerk's office to the record in order to prove that the challenge sheet was not filed with the clerk. The

---

[2] *See State v. Small*, noted at 198 Wn. App. 1008 (2017).

2

prosecutor responded by filing an affidavit of the chief deputy clerk of court that contained the challenge sheet and an explanation that it had been filed with the clerk's office, but not indexed because it was not a "regular pleading." Our commissioner permitted supplementation of the record with both the e-mails and the chief deputy clerk's affidavit and seating chart. Clerk's Papers (CP) at 186-94.

Although the peremptory challenge procedure was conducted silently on paper, a record of jury selection was made at the completion of the process in conjunction with a renewed defense motion for change of venue. The court and parties agreed that both sides had exercised all of their peremptory challenges and that the jury seated for trial was the jury intended by the parties. Report of Proceedings (RP) at 972, 1006.

The jury found the defendant guilty on all three counts as charged, and all three of the charged aggravating factors were found. CP at 40-41. The jury also returned a special verdict that both the murder and the burglary were committed with sexual motivation. CP at 43. The trial court ultimately sentenced Mr. Small to life in prison without the possibility of parole for the aggravated murder conviction, and to a lesser concurrent term for the burglary conviction that was enhanced 24 months by the sexual motivation finding. The sentences were to be served consecutively to the rape conviction in this case and to the 380 month term imposed for the rape of B.M. CP at 19-20.

3

Mr. Small timely appealed to this court. A series of delays, including two remands from this court for the purpose of establishing facts surrounding the jury selection process, delayed the resolution of this appeal for more than four years. A panel ultimately considered the case without oral argument.

## ANALYSIS

Mr. Small argues that his public trial rights were violated by the failure of the clerk to file the peremptory challenge document in a timely manner. We do not believe that the clerk's incorrect advice amounted to a public trial violation.

A criminal defendant's right to a public trial is found in art. I, § 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution. Both provide a criminal defendant the right to a public trial by an impartial jury. The state constitution also provides that "[j]ustice in all cases shall be administered openly," which grants the public an interest in open, accessible proceedings, similar to rights granted in the First Amendment to the United States Constitution. WASH. CONST. art. I, § 10; *State v. Lormor*, 172 Wn.2d 85, 91, 257 P.3d 624 (2011). Whether an accused's constitutional public trial right has been violated is a question of law that we review de novo. *State v. Easterling*, 157 Wn.2d 167, 173-74, 137 P.3d 825 (2006).

It is clear that for-cause and peremptory challenges implicate the public trial right. *State v. Love*, 183 Wn.2d 598, 605-06, 354 P.3d 841 (2015), *cert. denied*, 136 S. Ct.

4

1524, 194 L. Ed. 2d 604 (2016). In *Love*, the defendant argued silent peremptory challenges, even documented by a juror strike sheet, violated his right to a public trial. In disagreeing, the *Love* court noted:

> [T]he public had ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public; no juror was questioned in chambers. To the contrary, observers could watch the trial judge and counsel ask questions of potential jurors, listen to the answers to those questions, see counsel exercise challenges at the bench and on paper, and ultimately evaluate the empaneled jury. *The transcript of the discussion about for cause challenges and the struck juror sheet showing the peremptory challenges are both publicly available.*

*Id.* at 607 (emphasis added). The *Love* court held that written peremptory challenges "are consistent with the public trial right so long as they are filed in the public record." *Id.*

The facts here are similar to the facts in *Love*. In both cases, no processes were concealed from the public. Observers could watch the jury selection and evaluate the process from start to finish, including which venire jurors were excused, which were struck, and which were empaneled as jurors. But here, the documented record of the written peremptory challenges was not readily available to the public.

The relevant posttrial record establishes that the seating chart was never added to the computer index of documents maintained by the clerk of court and that appellate counsel for Mr. Small was erroneously told that it was not in the record. It was not until Small's counsel brought a motion to prove its absence that the prosecutor learned of this problem. Because counsel was misadvised about the seating chart, Small argues it was

5

not available for public view and his right to a public trial was violated. The State, citing RCW 36.23.030, argues the seating chart is not required to be assigned a docket number, so the lack of a docket number is not determinative.

We resolve this issue in a practical manner consistent with the purposes and practicalities of public trial rights. At all times, the public could view the jury selection process that occurred in open court. After the notations on the seating chart were made, a member of the public could have requested and would have eventually received a copy of the seating chart. Here, once the erroneous advice was made known, the clerk's office was able to find and provide the document. If public trial rights required same-day receipt of requested peremptory challenge information, a copy of peremptory challenge discussions—which might take several days to transcribe—would be insufficient to satisfy a defendant's right to a public trial. But *Love* implies that the eventual public availability of such a transcript is sufficient. *Love*, 183 Wn.2d at 607. By extension, a temporarily misplaced written record of peremptory challenges does not render an open proceeding closed. In reaching this conclusion, we note that the seating chart was always in the clerk's office, albeit misplaced, and there was no *court* action that prevented a requesting party from obtaining a copy of the chart.

Accordingly, we conclude that there was no violation of Mr. Small's public trial right.

6

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

The remaining claims include contentions that the evidence was insufficient to support elements of the first degree murder and rape charges, the court erred in enhancing the burglary charge by the sexual motivation finding, and the court erred by imposing legal financial obligations (LFOs) on Mr. Small. He also asks that we waive appellate costs in this action. We initially address the sufficiency of the evidence claims as one matter, then turn to the sexual motivation finding, and then briefly consider the LFO question together with the waiver of appellate costs issue.

*Sufficiency of the Evidence*

Mr. Small contends that the evidence was insufficient to support the premeditation element of the murder conviction. He also argues that there was insufficient proof of sexual intercourse to prove that element of the rape case. Properly considered, the evidence supported the jury's verdict in both instances.

Well-settled standards govern appellate challenges to the sufficiency of the evidence to support a conviction. We review such challenges to see if there was evidence from which the trier of fact could find each element of the offense proved beyond a

7

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Jackson*, 443 U.S. at 319; *Green*, 94 Wn.2d at 221-22. Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact and are not subject to review." *Id.* at 874.

Mr. Small challenges one element of each offense. In order to prove first degree murder as alleged in this case, the State was required to prove that the offense was committed with "premeditated intent to cause the death of another." RCW 9A.32.030(1)(a). Appellant contends that the evidence does not support the premeditation element. Premeditation must involve more than a moment in time. RCW 9A.32.020(1). Premeditation has been defined as "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Brooks*, 97 Wn.2d 873, 876, 651 P.2d 217 (1982).

The premeditation argument Mr. Small presents has its basis in *State v. Bingham*, 105 Wn.2d 820, 719 P.2d 109 (1986). There, a 5-4 majority of the court overturned a first degree murder conviction involving manual strangulation occurring during an act of

8

sexual intercourse. The majority concluded that the act of strangulation alone, even though it occurred during a three to five minute period, did not show any deliberation by the defendant. *Id.* at 822-23. An opportunity to deliberate was not evidence that actual deliberation had occurred. *Id.* at 827.

Mr. Small likens his case to *Bingham*, but that comparison fails. Shortly after *Bingham*, the Washington Supreme Court itself distinguished *Bingham* on the basis that the presence of other evidence suggesting a struggle or pre-incident planning showed deliberation. *State v. Ollens*, 107 Wn.2d 848, 733 P.2d 984 (1987) (procuring weapon and presence of defensive wounds supported premeditation); *accord State v. Sherrill*, 145 Wn. App. 473, 186 P.3d 1157 (2008) (beating death over period of time). This court similarly distinguished *Bingham* in a case where strangulation was accompanied by other evidence suggesting sufficient time to formulate the intent to kill. *State v. Gibson*, 47 Wn. App. 309, 734 P.2d 32 (1987). In *Gibson*, this court relied on evidence that the victim had suffered several blows to the head before being strangled with a cord. *Gibson* found primary support for its analysis in a pre-*Bingham* decision, *State v. Harris*, 62 Wn.2d 858, 385 P.2d 18 (1963). There the defendant also had inflicted several injuries during a beating before obtaining a cord and strangling the victim. *Id.* at 867-68. The *Harris* court concluded that the evidence supported the jury's conclusion that the killing was premeditated. *Id.* at 868. The *Bingham* majority also distinguished *Harris* on the

9

basis of the additional injuries inflicted prior to the strangulation. *Bingham*, 105 Wn.2d at 826.

Here, there was evidence of planning prior to the strangulation itself. For one thing, Mr. Small secretly had kept a key to the victim's home for many months prior to the killing and used it to let himself into the house. He also used a knife to threaten S.B., cut off her underwear, and inflict a tiny wound. As in *Harris* and *Gibson*, the victim here suffered blows to the head prior to the strangulation. There was sufficient evidence for the jury to conclude that he had a moment in time to consider his purpose before strangling S.B. to death. Accordingly, the evidence supports the jury's verdict.

With respect to the rape charge, one element that the State was required to prove was that sexual intercourse occurred. RCW 9A.44.040(1). Appellant contends that the evidence does not establish that intercourse occurred. He points to the fact that no sperm were recovered from the victim's body and that the State presented no evidence that his vasectomy had successfully eliminated all sperm from his ejaculate.

However, the State was not under any obligation to establish either of those facts. The prosecutor's obligation under the statute was to prove that sexual intercourse occurred. Evidence was introduced indicating that acid phosphate, an enzyme produced in the prostate and found in seminal fluid, was recovered from the victim's anus and vagina. Her body was found on her bed, face down and naked, with the hips slightly

10

elevated. Two pubic hairs from which the defendant's DNA was recovered were found on a blanket and a nearby towel, along with lubricant.

This evidence overwhelmingly supported the jury's determination that sexual intercourse occurred. The evidence was sufficient.

The evidence supported the jury's verdicts on both the murder and rape counts. Mr. Small's challenge to the sufficiency of the evidence on those counts is without merit.

*Sexual Motivation Finding*

Mr. Small argues that the court erred by increasing the sentence on the burglary count by 24 months due to the jury's finding that the crime was committed with sexual motivation. We agree that the 24 month enhancement did not apply to this case.

At the time of this crime in 1998, a sexual motivation finding under former RCW 9.94A.127 (1996)[3] permitted a trial court to impose an exceptional sentence. Former RCW 9.94A.390(2)(f).[4] Due to an amendment in 2006, a sexual motivation finding now also enhances the sentencing range by adding 24 months to the presumptive standard range. RCW 9.9A.533(8)(a). Although the prosecutor sought an exceptional sentence on the burglary charge due to the sexual motivation finding, the trial court declined to impose one. RP at 2746; CP at 19. The court did, however, enhance the standard range

---

[3] Now codified as RCW 9.94A.835.
[4] Now RCW 9.94A.535(3)(f).

11

of 67 to 89 months by the 24 month enhancement, resulting in a total standard range of 91-113 months. CP at 19. The court then imposed a 113 month sentence. CP at 19.

It was error to enhance the range since the enhancement provision was not in existence at the time of the crime in 1998. *See* RCW 9.94A.345 (law in effect at time of crime governs sentencing). The remaining question, then, is one of remedy. Mr. Small asks that we remand to reduce the burglary sentence by 24 months. The State argues that the issue is moot in light of the lengthier sentences that Mr. Small must serve.

Although we agree that little purpose is served in modifying the smallest concurrent sentence imposed in this case, it is erroneous and must be fixed since the judgment would otherwise be facially invalid. Accordingly, we remand for the trial court to either conduct a new sentencing proceeding on the burglary count or enter an agreed order correcting the standard range and imposing a new term within that range.

*Financial Matters*

Mr. Small also asks that we remand this case for a reconsideration of the LFOs and that we not impose appellate costs for this unsuccessful appeal.

The LFO issue was not raised at trial. Thus, this court has discretion whether or not to entertain the request. *State v. Blazina*, 182 Wn.2d 827, 833-35, 344 P.3d 680 (2015). In light of the remand for the burglary sentence, we leave to Mr. Small the option

No. 31226-7-III
*State v. Small*

of requesting that his LFOs be reconsidered at that time, either by an agreed order or by way of a hearing.

However, we do grant his request that appellate costs not be imposed. RAP 14.2. In light of the life sentence that he must serve, and the higher priority given to restitution to his victims, little purpose is served in ordering additional costs that have a tiny chance of being recovered after restitution is made.

The convictions are affirmed. The case is remanded for further proceedings in accordance with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, A.C.J.

13